UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH PITCHER,

        Plaintiff,

vs.

TOTAL DISTRIBUTION SERVICES,
INC., a Virginia corporation,

        Defendant.

and

TOTAL DISTRIBUTION SERVICES,
INC., a Virginia corporation

        Third-Party Plaintiff,

vs.

RAILSERVE, INC., a Delaware
corporation,

        Third-Party Defendant.

Case No. 99-73073
Hon. Avern Cohn
Mag. Judge Virginia Morgan

**MOTION FOR SUMMARY JUDGMENT
AS TO COMPLAINT AND THIRD-PARTY
COMPLAINT**



PEARLMAN & PIANIN
By:   Arvin J. Pearlman (P18743)
       Elaine L. Livingway (P39307)
Attorneys for Plaintiff
One Towne Square, Suite 1870
Southfield, Michigan 48076
(248) 356-5000

BOWEN, RADABAUGH, MILTON
 & BROWN, P.C.
By:   Thomas R. Bowen (P27618)
Attorneys for Railserve, Inc.
4967 Crooks Road, Suite 150
Troy, Michigan 48098
(248) 641-8000

CROSS WROCK, P.C.
By:   Jack O. Kalmink (P24087)
Attorneys for Total Distribution
   Services, Inc.
400 Renaissance Center, Suite 1900
Detroit, Michigan 48243
(313) 259-1144

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

25

## MOTION FOR SUMMARY JUDGMENT AS
## TO COMPLAINT AND THIRD-PARTY COMPLAINT

Defendant and Third-Party Plaintiff, Total Distribution Services, Inc. ("TDSI"),

moves for summary judgment pursuant to Fed. R. Civ. P. 56(c), for the following reasons

stated in the attached brief.

CROSS WROCK, P.C.

By: _____
        Jack O. Kalmink (P24087)
Attorneys for Total Distribution Services, Inc.
400 Renaissance Center, Suite 1900
Detroit, Michigan 48150
(313) 259-1144

Dated:  May 1, 2000
C:\MyFiles\MAK\TDSI\sumdis.mot.wpd

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48242

i

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH PITCHER,

        Plaintiff,

vs.

TOTAL DISTRIBUTION SERVICES,
INC., a Virginia corporation,

        Defendant.

and

TOTAL DISTRIBUTION SERVICES,
INC., a Virginia corporation

        Third-Party Plaintiff,

vs.

RAILSERVE, INC., a Delaware
corporation,

        Third-Party Defendant.

Case No. 99-73073
Hon. Avern Cohn
Mag. Judge Virginia Morgan

**BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT AS TO
COMPLAINT AND THIRD-PARTY
COMPLAINT**



---

PEARLMAN & PIANIN
By:    Arvin J. Pearlman (P18743)
        Elaine L. Livingway (P39307)
Attorneys for Plaintiff
One Towne Square, Suite 1870
Southfield, Michigan 48076
(248) 356-5000

BOWEN, RADABAUGH, MILTON
  & BROWN, P.C.
By:    Thomas R. Bowen (P27618)
Attorneys for Railserve, Inc.
4967 Crooks Road, Suite 150
Troy, Michigan 48098
(248) 641-8000

CROSS WROCK, P.C.
By:    Jack O. Kalmink (P24087)
Attorneys for Total Distribution
    Services, Inc.
400 Renaissance Center, Suite 1900
Detroit, Michigan 48243
(313) 259-1144

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ................................... ii

MOST SIGNIFICANT AUTHORITIES ................................... iii

FACTUAL BACKGROUND .......................................... 1

    A.    Plaintiff's Claim ........................................... 1

    B.    Railserve/TDSI Contract ..................................... 3

    C.    Grounds for Motion for Summary Judgment ...................... 5

ARGUMENT .................................................. 5

    I.    Standard of Review ........................................ 5

    II.    Plaintiff's Claim Fails Because There Is No Evidence Of
          A Defect In The Premises And Because The Cause Of
          Plaintiff's Accident Was His Negligence And His Violation
          of Railserve's Safety And Operation's Procedures ................. 6

          A.    Plaintiff Has No Evidence Of An Unreasonably
               Dangerous Condition In The Premises ..................... 6

          B.    TDSI Had No Duty To Warn Plaintiff Of Dangers
               Which Plaintiff Was Or Should Have Been Aware ............. 9

          C.    TDSI Had No Duty To Protect Plaintiff From An
               Open And Obvious Condition ........................... 10

    III.    TDSI Is Entitled To Summary Judgment On Its Third
          Party Complaint ......................................... 11

          A.    Railserve Breached Its Contractual Duty To Defend
               And Indemnity TDSI .................................. 12

          B.    Assuming, Arguendo, The Plaintiff Stepped Into A
               Hole, Railserve Breached Its Contractual Duty To
               Inform TDSI Of An Unsafe Condition ..................... 15

CONCLUSION ................................................. 16

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

## STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiff's slip and fall claim fails because Plaintiff has presented no evidence of any unreasonably dangerous defect in the premises where he fell.

2.  Whether Plaintiff's slip and fall claim fails because the cause of Plaintiff's fall was his negligence in jumping off a train at night that was moving at 12-16 m.p.h. and in failing to carry a light so that he could observe the ground before he jumped.

3.  Whether the unambiguous TDSI/Railserve contract requires that Railserve defend and indemnify TDSI.

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

## MOST SIGNIFICANT AUTHORITIES

*Antcliff v. State Employees Credit Union*
414 Mich. 624 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bertrand v. Alan Ford, Inc.*
449 Mich. 606 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Gjelaj v. Wal-Mart Stores, Inc.*
27 F. Supp.2d 1011 (E.D. Mich. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Millikin v. Walton Manor Mobile Home Park, Inc.*
234 Mich. App. 490 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pritts v. J. I. Case Co.*
108 Mich. App. 22 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rasheed v. Chrysler Corp.*
445 Mich. 109 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Riddle v. McLouth Steel Products Corp.*
440 Mich. 85 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Triple E Produce Corp. v. Mastronardi Produce, Ltd.*
209 Mich. App. 165 (1993), lv. den. 450 Mich. 899 (1995) . . . . . . . . . . . . . . . . . . . . . 14

*UAW-GM Human Resource Center v. KSL Recreation Corp.*
228 Mich. App. 486 (1998), lv. den. 459 Mich. 940 (1999) . . . . . . . . . . . . . . . . . . . . . 13

*Walbridge Aldinger Co. v. Walcon Corp.*
207 Mich. App. 566 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. Cunningham Drug Stores, Inc.*
429 Mich. 495 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTES:

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

iii

### BRIEF IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT AS
### TO COMPLAINT AND THIRD-PARTY COMPLAINT

#### Factual Background

**A.    Plaintiff's Claim**

On October 16, 1997, Plaintiff was employed as a switchman by Third-Party Defendant Railserve, Inc.  Railserve had a contract with Defendant and Third-Party Plaintiff, Total Distribution Services, Inc. ("TDSI") to perform "terminal services" for TDSI (Exhibit A).  Railserve would switch railcars from one train to another and would facilitate the loading and unloading of railcars.

During a switching operation, Plaintiff was injured  when he jumped off a moving train onto property owned by TDSI.  Plaintiff testified that the train was going 12 to 16 miles per hour when he stepped off it (Exhibit C, p. 21).  This happened about 8:00 p.m. and the area was dark (Exhibit C, pp. 15, 21).  Plaintiff testified that he was following the procedure he was taught at Railserve for disembarking from a moving railcar (Exhibit C, p. 37).

When Plaintiff disembarked, he was standing on a ladder on the side of a railcar about one to two feet off the ground and could not see the ground (Exhibit C, p 22).  The ground adjacent to railroad tracks is covered with a layer of ballast, which is 3/4 inch crushed stone (Exhibit F, p. 10). Ballast provides both flexibility and support for the tracks (Exhibit F, pp. 47-48). But, by its nature, it is rather unstable, as the crushed rock can shift (Exhibit F, p. 65).

Plaintiff claimed that he must have stepped in a hole when he jumped off the train,

1

which caused him to fall and injure his ankle. But after he fell, Plaintiff didn't see a hole in that area (Exhibit C, p. 23). Nevertheless, Plaintiff had worked in that area prior occasions and claimed that there were "holes all over the place." *Id.*

Railserve's and Plaintiff's actions on the night of Plaintiff's accident violated Railserve's own procedures (Exhibit E). First, Plaintiff jumped off a train that was moving 12 to 16 m.p.h. (Exhibit C, p. 21). This is contrary to Railserve's Safety and Operations Procedures manual, which provides: "Employees must not mount or dismount equipment faster than 4 mph or walking speed *** They must be sure that their speed is 4 mph or less and if it is not, have the operator reduce speed." (Exhibit E, p. 50).

Second, the Railserve manual provides: "Before dismounting employees must inspect the footing of the area where they wish to dismount." (Exhibit E, p. 50). Plaintiff testified that he could not see the ground where he stepped off the moving train, so he obviously did not inspect the footing of that area.

Third, Plaintiff was not using (or Railserve did not provide) all of the proper equipment for safely dismounting from a moving railcar. Switchmen should carry railroad lanterns when switching cars at night so that they can see the ground (Exhibit F, p. 67). Railroad lanterns are specifically designed with a loop handle so that the lantern can hang on the switchman's arm while he is riding on the side of the railcar (Exhibit F, p. 67). Plaintiff was not carrying a railroad lantern or any other light the night of his accident (Exhibit D, p. 64). Thus, Plaintiff did not look at the condition of the ground where he landed before he jumped off the moving train.

2

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

## B.    Railserve/TDSI Contract

The Automobile Terminal Railcar Operation Agreement, dated August 1, 1997,

governs the relationship and obligations between TDSI and Railserve (Exhibit A).  This

motion focuses on two provisions of that contract:  1) Railserve's agreement to defend,

indemnify and hold TDSI harmless from any claims by Railserve employees and 2)

Railserve's duty to inspect the premises where Plaintiff was working and to notify TDSI of

any unsafe condition that required repair or maintenance.

The pertinent provisions of the parties' contract regarding Railserve's agreement

to defend and indemnify TDSI are as follows:

7.    Liability

A.    Railserve shall defend, protect, indemnify and
hold harmless TDSI against and from any and
all claims, losses, damages, liability, suits,
actions, and judgements, costs and expenses
(including reasonable attorney's fees and
litigation expense) resulting:
(i) from injury or death of any person or persons
whomsoever, including agents, Facility users,
servants or employees of TDSI or Railserve;

***

if such event shall have arisen solely or partially from any act
of commission or omission, negligent, grossly negligent or
intentional, of Railserve in performing or failing to perform any
duties or obligations under this Agreement;  provided,
however, that in the event both Railserve and TDSI are found
to be jointly negligent, liability and costs and expenses as to
Railserve and TDSI shall be shared in proportion to their
allocable share of such joint negligence or misconduct.

B. Railserve shall, at its own cost and expense, defend any
and all claims, suits and judgements arising from any demand
or proceeding, whether groundless or not, which may be

3

> commenced either solely or jointly against TDSI or TDSI and Railserve arising out of or in connection with any matter specified in paragraph (i), (ii), or (iii) of subsection A above. Railserve shall, subject to Subsection A above, pay and satisfy any and all claims, losses, damages, liability, suits, actions and judgements arising from any demand or proceeding, and defray or reimburse any and all expenses, including, but not limited to, reasonable attorneys' fees and reimbursement of witness expenses, which may be incurred by reason of such demands or proceedings and shall keep the property of TDSI free and unencumbered of and from any and all charges and/or liens of any kind arising therefrom.

This contract is unambiguous in its requirement that Railserve defend and

indemnify TDSI in any claim for injury brought by a Railserve employee in connection with

Railserve's performance under the Agreement.  Obviously, this lawsuit arose from

Railserve's and its employees' conduct in carrying out the work contemplated by the

Railserve/TDSI contract.   Railserve breached the indemnification provision of the

agreement by refusing to defend and indemnify TDSI in this lawsuit (Exhibit B).

In addition, Railserve breached other duties under the Agreement, which provides:

2.    Maintenance:

Railserve will maintain the condition of the building, fueling facility, switches and support facilities as follows:

***

E.    Railserve will inspect the tracks and switches daily to insure their operational safety, and submit to TDSI detailed written reports of deficiencies on day of detection.

F.    Railserve will promptly inform the TDSI of any unsafe and unusual conditions encountered while

4

performing the railcar operations.

Thus, Railserve had the explicit duty to inspect the switching yard daily and to notify TDSI of any conditions that needed repair. If, as Plaintiff testified, he stepped in a hole when he disembarked from the moving railcar, it was Railserve's duty to advise TDSI of that situation so that it could be repaired.

## C.     Grounds For Motion For Summary Judgment

TDSI brings this motion because Plaintiff has no proof that he stepped in a hole or that TDSI was on notice of such an alleged defect. But even if there were such a defect, Plaintiff failed to take any precautions for his own safety. In addition, it was Railserve's contractual duty to inspect the area adjacent to the tracks and to notify TDSI of any unsafe conditions, which Railserve did not do. Moreover, it is Railserve's obligation to defend and indemnify TDSI in this lawsuit.

For these reasons, TDSI asks this Court to grant summary judgment as to both the Plaintiff's Complaint and as to the Third-Party Complaint.

### Argument

## I.     Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the movant has established the absence of a genuine issue of material fact, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present

5

sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is sufficient. *Liberty Lobby*, 477 U.S. at 252.

## II. Plaintiff's Claim Fails Because There Is No Evidence Of A Defect In The Premises And Because The Cause Of Plaintiff's Accident Was His Negligence And His Violation Of Railserve's Safety And Operation's Procedures

Plaintiff claims that TDSI was negligent 1) in failing "to maintain its property in a reasonably safe condition, free from dangerous holes and uneven ballast;" 2) in failing "to exercise ordinary care to protect Plaintiff from unreasonable risks of injury" of which TDSI was or should have been aware; 3) in failing "to warn Plaintiff of dangers;" and 4) in failing "to inspect its property of dangerous conditions." (Complaint, ¶ 8).

Basic Michigan premises liability law is that "a premises owner must maintain his or her property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that might result in injury." *Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85, 90 (1992). It is also a basic tenet of Michigan law that a property owner is not an absolute insurer of the safety of invitees. *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 500 (1988).

### A. Plaintiff Has No Evidence Of An Unreasonably Dangerous Condition In The Premises

Plaintiff has the burden of providing evidence that an unreasonably dangerous condition was the proximate cause of his injury. In this case, Plaintiff has presented no evidence to support the allegations in his Complaint or that an unreasonably dangerous condition caused his injury.

Plaintiff testified that the train was moving at 12-16 miles per hour when he jumped

6

off it and that he thought he stepped in a hole or onto unlevel ground (Exhibit C, pp. 21-

23). His own words were:

> Q:   You tried stepping off the car with your right
> foot. And tell me as best as you can recall
> exactly what happened.
>
> A:   All right. It was dark. I went to step off with my
> right foot, I felt it gave way in a hole and I fell.
>
> Q:   When you say you felt it give way in a hole,
> what makes you think it was a hole?
>
> A:   Well, the way my foot went in, I could tell it
> wasn't really level ground.
>
> Q:   Is that – is that area gravel covered, rock
> covered?
>
> A:   Rock covered.

(Exhibit C, p. 22).

But Plaintiff does not know what, if anything, he stepped into or onto. He admitted

that he never actually saw a hole either before or after the incident (Exhibit C, pp. 23-24).

Furthermore, he never returned to the area to determine if there was an unreasonably

dangerous condition where he fell (Exhibit C, p. 24).

In reality, there is no evidence of any other cause of Plaintiff's accident than the

negligence of Railserve and Plaintiff himself. Invitees have an obligation "to take

reasonable precautions for their own safety." *Gjelaj v. Wal-Mart Stores, Inc.*, 27 F.

Supp.2d 1011, 1013 (E.D. Mich. 1998). Therefore, a defendant cannot be held liable

when a plaintiff takes unnecessary risks.

Plaintiff jumped off a train that was going 12-16 miles per hour in the dark. He

7

couldn't see where he was going to land; yet he jumped off the train anyway.

It was a violation of Railserve's own procedures for Plaintiff to dismount from a train going faster than 4 m.p.h. (Exhibit E, p. 50). In addition, contrary to industry practice, Plaintiff was not carrying a railroad lantern or any other kind of light that would have enabled him to see the ground where he was jumping (Exhibit D, p. 64). Plaintiff also violated Railserve's safety procedures when he failed to inspect the footing of the area before he dismounted (Exhibit E, p. 50).

Even though Plaintiff did not see a hole where he fell, and has no evidence that he actually stepped in a hole when he jumped off the train, presumably he will argue that there must have been a hole, because when he had worked in the area on prior occasions, he noticed that "there were holes all over the place." (Exhibit C, p. 23). But Plaintiff also testified that he had never seen a hole in the particular area where he fell (Exhibit C, p. 24). TDSI strenuously disputes Plaintiff's contention that there was any unreasonably dangerous condition in the general area where Plaintiff was working. But, even if the ballast was uneven in some places, that would have no relevance to the issue of whether Plaintiff's injury was caused by stepping into a hole.

Because Plaintiff has no evidence, other than his own speculation, that there was a hole where he landed when he jumped off the moving train, Plaintiff has failed to establish that his injury was caused by an unreasonably dangerous condition on the premises.

8

## B.   TDSI Had No Duty To Warn Plaintiff Of Dangers Of Which Plaintiff Was Or Should Have Been Aware

Plaintiff claims that TDSI was negligent in failing to warn him of dangers that "Plaintiff would not discover or would not protect himself against." (Complaint, ¶ 8(c)). This claim fails for three reasons. First, as stated above, Plaintiff can only speculate that his foot went into some sort of hole or uneven ballast when he hopped off the moving train; he has no evidence to support his speculation.

Second, Plaintiff knew that the ballast along side the railroad track was composed of crushed rock that could shift. Plaintiff's employer, Railserve, was under contract to do the job Plaintiff was doing when he was injured, i.e., to switch railcars. TDSI expected that Railserve would have the expertise to properly train its employees to safely perform that operation.

This case is analogous to *Antcliff v. State Employees Credit Union*, 414 Mich. 624 (1982), where the Michigan Supreme Court observed that there are "countless skilled operations ... which involve otherwise non-dangerous products in potentially dangerous situations. A [defendant] should be able to presume mastery of the basic operation [by plaintiff's employer]. *Id.* at 640. Therefore, the defendant has no duty to provide instructions and warnings as to how to "properly perform the basic operation." *Id.*

So too in this case, TDSI presumed that Railserve and its employees had mastered the basic operation of safely switching railcars. This included using the proper equipment (such as a railroad lantern), being familiar with the terrain (such as ballast which is an inherently unstable surface), and stepping off moving trains only at a safe speed (not 12

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

9

to 16 m.p.h.). TDSI had no duty to warn Railserve or Plaintiff regarding any of these aspects of carrying out their skilled operation of switching railcars.

Third, if there was a hole or uneven ballast, as Plaintiff speculates, it would have been open and obvious, had Plaintiff been using a railcar lantern. Where a condition is open and obvious, a property owner has no duty to warn invitees if the invitee "should have discovered the condition and realized its danger." *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 611 (1995). The *Bertrand* Court further held that a property owner is not required to make his entire premises "foolproof." *Id.* at 616-617. This is because a reasonably prudent person "will look where he is going" and "will take appropriate care for his own safety." *Id.* at 616.

In this case, Plaintiff did not look where he was going, did not carry a railroad lantern, and jumped from a train that was traveling at an excessive speed. Plaintiff clearly did not take appropriate care for his own safety. Therefore, TDSI had no duty to warn Plaintiff to do his job properly and safely and has no liability for Plaintiff's injuries.

## C.   TDSI Had No Duty To Protect Plaintiff From An Open And Obvious Condition

The open and obvious doctrine applies not only to a claim of failure to warn, but it also applies with equal force to a claim that a defendant "breached a duty in allowing a dangerous condition to exist in the first place." *Millikin v. Walton Manor Mobile Home Park, Inc.*, 234 Mich. App. 490, 495 (1999).

In *Millikin*, while washing windows behind her mobile home, the plaintiff tripped over a support wire that ran from a utility pole to the ground near the home. *Id.* at 491. Plaintiff

10

had never noticed the wire before and did not see it when she tripped because she was looking at the window she was washing. The court granted summary disposition to the premises owner because the support wire was open and obvious. The court stated that "regardless of plaintiff's allegations that defendant allowed the support wire to be where it was in an unreasonable and negligent manner, the simple fact is that Plaintiff would not have been injured had she noticed the wire." *Id.* at 497. Plaintiff's only basis for asserting that the support wire was dangerous was that she did not see it. Because she failed to establish anything unusual about the wire and did not present "any facts that the [support wire] posed an <u>unreasonable</u> risk of harm," summary disposition was proper. *Id.* at 499, quoting *Bertrand*, 449 Mich. at 624.

This case presents the same sort of factual scenario. Although Plaintiff has presented no evidence that he stepped into a hole, if a hole existed, such a condition certainly would have been open and obvious. Had Plaintiff been properly equipped with a railroad lantern, he would have seen the ground where he was stepping. Similarly, had Plaintiff followed the instructions in Railserve's manual, he would have "inspected the footing of the area where [h]e wished to dismount," and thus, would have seen the ground where he was stepping. Plaintiff has presented no facts to show that anything other than his own negligence presented an unreasonable risk of harm to him.

## III.   TDSI Is Entitled To Summary Judgment On Its Third Party Complaint

The relationship and division of responsibilities between TDSI and Railserve are governed by the Automobile Terminal Railcar Operation Agreement ("the Agreement"), dated August 1, 1997 (Exhibit A). Railserve has breached two provisions of that contract:

11

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

1) Railserve's obligation to defend, indemnify and hold TDSI harmless from all claims by
Railserve employees and 2) Railserve's obligation to inspect the premises where Plaintiff
was working and to notify TDSI of any unsafe condition that required repair or
maintenance.

## A.    Railserve Breached Its Contractual Duty to Defend and Indemnify TDSI

The parties' Agreement provides in pertinent part:

7.    Liability

A.    Railserve shall defend, protect, indemnify and
hold harmless TDSI against and from any and
all claims, losses, damages, liability, suits,
actions, and judgements, costs and expenses
(including reasonable attorney's fees and
litigation expense) resulting:
(i) from injury or death of any person or persons
whomsoever, including agents, Facility users,
servants or employees of TDSI or Railserve;

***

if such event shall have arisen solely or partially from any act
of commission or omission, negligent, grossly negligent or
intentional, of Railserve in performing or failing to perform any
duties or obligations under this Agreement; provided,
however, that in the event both Railserve and TDSI are found
to be jointly negligent, liability and costs and expenses as to
Railserve and TDSI shall be shared in proportion to their
allocable share of such joint negligence or misconduct.

B. Railserve shall, at its own cost and expense, defend any
and all claims, suits and judgements arising from any demand
or proceeding, whether groundless or not, which may be
commenced either solely or jointly against TDSI or TDSI and
Railserve arising out of or in connection with any matter
specified in paragraph (i), (ii), or (iii) of subsection A above.
Railserve shall, subject to Subsection A above, pay and
satisfy any and all claims, losses, damages, liability, suits,
actions and judgements arising from any demand or

12

> proceeding, and defray or reimburse any and all expenses, including, but not limited to, reasonable attorneys' fees and reimbursement of witness expenses, which may be incurred by reason of such demands or proceedings and shall keep the property of TDSI free and unencumbered of and from any and all charges and/or liens of any kind arising therefrom.

In essence, the Agreement states that Railserve shall indemnify TDSI from any claims by a Railserve employee arising solely or partially from any act of Railserve in performing or failing to perform any duties or obligations under the Agreement. Further, the agreement provides that Railserve shall bear the full cost of any suit against TDSI arising out of Railserve's performance under the Agreement.

Michigan law concerning indemnity agreements such as the contract at issue follows general principles of contract construction and interpretation. "Where an indemnity contract is clear and unambiguous, its interpretation is a question of law for the trial court to decide." *Walbridge Aldinger Co. v. Walcon Corp.*, 207 Mich. App. 566, 572 (1994); *Sherman v. DeMaria Bldg. Co.*, 203 Mich. App. 593, 596 (1994). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127, n. 28 (1994). Thus, courts may not "make a different contract for the parties or ... look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning." *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich. App. 486, 491 (1998), lv. den. 459 Mich. 940 (1999). In addition, "when the parties include an integration clause in their written contract, it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud ... or

13

where an agreement is obviously incomplete ...." *Id.* at 502.

The Agreement at issue is fully integrated. It states: "This Agreement represents the entire agreement between the parties. All prior or contemporaneous agreements, whether written or oral, shall be deemed null and void." Therefore, the court must look solely to the contract itself to determine its meaning. *Id.*

The parties' Agreement states that "Railserve shall, at its own cost and expense, defend any and <u>all</u> claims, suits and judgments ... which may be commenced either solely or jointly against TDSI ...." The "use of the term 'all' in an indemnity clause has been interpreted to provide for the broadest possible indemnification." *Triple E Produce Corp. v. Mastronardi Produce, Ltd.*, 209 Mich. App. 165, 173 (1993), lv. den. 450 Mich. 899 (1995); *Pritts v. J. I. Case Co.*, 108 Mich. App. 22, 30 (1981) ("there cannot be any broader classification than the word 'all.' In its ordinary and natural meaning, the word 'all' leaves no room for exceptions.").

Paragraph A of the Agreement provides that if "both Railserve and TDSI are found to be jointly negligent, liability and costs and expenses as to Railserve and TDSI shall be shared in proportion to their allocable share of such joint negligence or misconduct." Plaintiff was an employee of Railserve. Therefore, under the exclusivity provision of Michigan's workers compensation statute, Plaintiff could not sue his employer, Railserve, unless Railserve's negligence rose to the level of an intentional tort. Consequently, because Railserve and TDSI could not be found jointly negligent, under Michigan law, the provision of Paragraph A regarding allocation of liability and expenses is inapplicable to this case.

14

Therefore, the remainder of Paragraphs A and B govern Railserve's obligations in this case. Paragraph B unequivocally provides that "Railserve shall, at its own cost and expense, defend ... all ... suits ..., which may be commenced either solely or jointly against TDSI or TDSI and Railserve arising out of ... paragraph (i) [... injury ... of any person ..., including ... employees of ... Railserve]. Railserve shall, subject to Subsection A above, pay and satisfy any and all ... suits ... arising from any demand or proceeding, and defray or reimburse any and all expenses ..."

Because this suit arises from the injury of a Railserve employee, Railserve has a clear and unambiguous contractual duty to defend and indemnify TDSI. Therefore, TDSI is entitled to summary judgment on its Third Party Complaint.

**B.    Assuming, Arguendo, That Plaintiff Stepped Into A Hole, Railserve Breached Its Contractual Duty To Inform TDSI Of An Unsafe Condition**

As stated above, TDSI contends that there is no evidence to support Plaintiff's allegations. However, assuming, _arguendo_, that Plaintiff can substantiate his claim, Railserve had a contractual obligation to daily inspect the area where Plaintiff was injured and to inform TDSI of any deficiencies or unsafe condition. The pertinent portion of the Agreement provided:

> 2.    Maintenance:
>
>    Railserve will maintain the condition of the building, fueling facility, switches and support facilities as follows:
>
>    ***
>
>    E.    Railserve will inspect the tracks and switches daily to insure their

15

> operational safety, and submit to
> TDSI detailed written reports of
> deficiencies on day of detection.
>
> F.    Railserve will promptly inform the
> TDSI of any unsafe and unusual
> conditions encountered while
> performing the railcar operations.

Robert Carey, who was operations manager for TDSI, testified as follows regarding

Railserve's responsibilities and obligations:

> Q:    All right. Was there anything in writing that
> you're aware of that governed the New Boston
> facility in terms of what kind of maintenance was
> to be provided to the ballast?
>
> A:    The - - the contractor had an obligation,
> meaning Railserve, had an obligation to me to
> notify me of any conditions they thought were
> unsafe for any of the employees, anything of a
> maintenance nature that they thought I needed
> to take care of, and I would do that.

(Exhibit F, pp. 55-56). TDSI also retained another outside contractor to do quarterly

inspections of the premises. If Railserve notified Mr. Carey of any concerns (as they were

contractually obligated to do), TDSI would have had the repairs done (Exhibit F, pp. 74-

75). There is absolutely no evidence that Railserve ever notified TDSI of any problem with

the ballast or a hole where Plaintiff alleges he fell. Not having notified TDSI of any such

problem (if it existed), Railserve breached that provision of the Agreement.

## CONCLUSION

Plaintiff has admitted 1) that he jumped off a train that was moving 12-16 m.p.h.,

2) that he was not carrying a railroad lantern, 3) that he did not see a hole in the area

16

either before or after he fell, and 4) that he never returned to the area to determine whether there was any sort of defect that may have contributed to his fall. Therefore, Plaintiff has no evidence to show any liability on the part of TDSI.

Moreover, there is no question of material fact that Plaintiff violated Railserve's operating procedures by 1) jumping off a train that was moving faster than 4 m.p.h. and 2) by failing to inspect the footing of the ground before he jumped. The cause of Plaintiff's injury was his own failure to use a modicum of care for his own safety, not any negligence by TDSI.

As to TDSI's Third Party Complaint, the TDSI/Railserve contract unambiguously provides that Railserve is to defend and indemnify TDSI from any and all claims, such as this lawsuit. Moreover, pursuant to that agreement, Railserve had a duty to inspect the premises and to notify TDSI of any unsafe conditions. TDSI had no notice of any unsafe condition in the area where Plaintiff alleges he fell.

For these reasons, TDSI respectfully requests that this Court grant it summary judgment as to Plaintiff's Complaint and as to its Third Party Complaint.

CROSS WROCK, P.C.

By: _____
Jack O. Kalmink (P24087)
Attorneys for Total Distribution Services, Inc.
400 Renaissance Center, Suite 1900
Detroit, Michigan 48150
(313) 259-1144

Dated:  May 1, 2000
C:\MyFiles\MAK\TDSI\sumdis.brf.wpd

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH PITCHER,

        Plaintiff,

vs.

TOTAL DISTRIBUTION SERVICES,
INC., a Virginia corporation,

        Defendant.

and

TOTAL DISTRIBUTION SERVICES,
INC., a Virginia corporation

        Third-Party Plaintiff,

vs.

RAILSERVE, INC., a Delaware
corporation,

        Third-Party Defendant.

Case No. 99-73073
Hon. Avern Cohn
Mag. Judge Virginia Morgan

**NOTICE OF HEARING**



---

PEARLMAN & PIANIN
By:    Arvin J. Pearlman (P18743)
        Elaine L. Livingway (P39307)
Attorneys for Plaintiff
One Towne Square, Suite 1870
Southfield, Michigan 48076
(248) 356-5000

BOWEN, RADABAUGH, MILTON
 & BROWN, P.C.
By:    Thomas R. Bowen (P27618)
Attorneys for Railserve, Inc.
4967 Crooks Road, Suite 150
Troy, Michigan 48098
(248) 641-8000

CROSS WROCK, P.C.
By:    Jack O. Kalmink (P24087)
Attorneys for Total Distribution
    Services, Inc.
400 Renaissance Center, Suite 1900
Detroit, Michigan 48243
(313) 259-1144

---

CROSS WROCK
400 RENAISSANCE CENTER
DETROIT
48243

## NOTICE OF HEARING

To:    Arvin J. Pearlman, Esq.          Thomas R. Bowen, Esq.
        Elaine L. Livingway, Esq.      Bowen, Radabaugh, Milton & Brown
        Pearlman & Pianin             4967 Crooks Road, Suite 150
        One Towne Square, Suite 1870  Troy, Michigan  48098
        Southfield, Michigan  48076

PLEASE TAKE NOTICE that the attached Motion for Summary Judgment as to Complaint and Third-Party Complaint has been filed with the Clerk of the U.S. District Court for the Eastern District of Michigan and will be brought on for hearing before the Honorable Avern Cohn at a date and time to be determined by the Court.

CROSS WROCK, P.C.

By: _____
     Jack O. Kalmink (P24087)
Attorneys for Total Distribution Services, inc.
400 Renaissance Center, Suite 1900
Detroit, Michigan 48150
(313) 259-1144

Dated:  May 1, 2000
C:\MyFiles\MAK\TDS\hearing.not.wpd

i

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED